**Walanzo Deon ROBINSON, Petitioner,**

v.

**The STATE of Oklahoma, Respondent.**

**No. PC–96–1224.**

Court of Criminal Appeals of Oklahoma.

April 14, 1997.

102

Katherine Jane Clark, Appellate Defense Counsel, Capital Post–Conviction Oklahoma Indigent Defense System, Norman, on appeal for Petitioner.

*OPINION DENYING ORIGINAL APPLICATION FOR POST–CONVICTION RELIEF, REQUEST FOR EVIDENTIARY HEARING, EXTENSION OF TIME TO AMEND AND MOTION FOR DISCOVERY*

LANE, Judge.

Petitioner Walzano Deon Robinson was tried by a jury and convicted of First Degree Malice Murder in Oklahoma County, Case No. CRF–89–4791. In accordance with the jury's recommendation, the Honorable Bana Blasdel, District Judge, sentenced Petitioner to death. Petitioner's conviction was affirmed by this Court following his original direct appeal. *Robinson v. State,* 900 P.2d 389 (Okl.Cr.1995).

In accordance with the recent amendments to the Uniform Post–Conviction Procedure Act, 22 O.S.Supp.1995, § 1089(D)(1), Petitioner filed his Original Application for Post–Conviction Relief on October 4, 1996.[1] In this first application for post-conviction relief, Petitioner has raised four allegations of error.[2] Our consideration of these claims will be strictly limited by the statutory rules which establish our authority in post-conviction matters. 22 O.S.Supp. 1995, § 1080, *et seq.* We reiterate here the narrow scope of review available on collateral appeal. The Post–Conviction Procedure Act was neither designed nor intended to provide petitioners with another direct appeal. *Fowler v. State,* 896 P.2d 566, 569 (Okl.Cr. 1995); *Fox v. State,* 880 P.2d 383, 384 (Okl. Cr.1994), *cert denied,* — U.S. —, 115 S.Ct. 1318, 131 L.Ed.2d 199 (1995). The post-conviction statutes have never provided applicants with more than very limited grounds upon which to attack their final judgments. Accordingly, post-conviction claims which could have been raised in prior

---

1. While Petitioner's application was not filed within the time limits specified in § 1089(D)(1), it was timely filed in accordance with the briefing schedule set up by this Court in *Sahib Al–Mosawi et al. v. State,* 929 P.2d 270 (Okl.Cr. 1996).

2. Petitioner alleges four proposition of error, each containing multiple sub-propositions. Only the main proposition of error listed for each alleged error is listed below. For the record, all of Petitioner's propositions of error were reviewed and considered by this Court.

appeals but were not are generally considered waived. *Moore v. State*, 889 P.2d 1253, 1255–56 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Johnson v. State*, 823 P.2d 370, 372 (Okl.Cr. 1991), *cert. denied,* 504 U.S. 926, 112 S.Ct. 1984, 118 L.Ed.2d 582 (1992). Post–Conviction claims which were raised and addressed in previous appeals are barred as *res judicata. Moore,* 889 P.2d at 1255; *Walker v. State*, 826 P.2d 1002, 1005 (Okl.Cr.), *cert. denied,* 506 U.S. 898, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992). These procedural bars still apply to claims raised under amended Section 1089. However, under the amended statute, 22 O.S.Supp.1995, § 1089(C)(1), only those capital post-conviction claims that were not and could not have been raised on direct appeal will escape being waived or barred as *res judicata.* 22 O.S.Supp.1995, § 1089(C)(1).

The statute specifically and narrowly defines a post-conviction claim which could not have been raised on appeal as either (1) an ineffective assistance of trial or appellate counsel claim that meets the statutory definition of ineffective assistance of direct or appellate counsel [3]; or where (2) the legal basis of the collaterally asserted claim

> (a) was not recognized by or could not have been reasonably formulated from a final decision of the United States Supreme Court, a court of appeals of the United States, or a court of appellate jurisdiction of this state ... or (b) is a new rule of constitutional law that was given retroactive effect by the United States Supreme Court or a court of appellate jurisdiction of this state....

22 O.S.Supp.1995, § 1089(D)(9)(a) & (b). Assuming a post-conviction claim is not procedurally barred and falls within one of the above referenced categories, Petitioner's claims will only be afforded collateral review if, in addition to meeting the initial criteria, they support a conclusion either that the outcome of the trial would have been different but for the errors or that the Petitioner is factually innocent. 22 O.S.Supp.1995, § 1089(C)(2). Recognizing the legislature's intent to honor and preserve the legal princi-

ple of finality of judgment, we will narrowly construe the post-conviction amendments to reflect that intent.

Petitioner claims at his first proposition of error that Oklahoma's amended Post–Conviction Procedure Act, on its face and as applied, is unconstitutional in that it denies him due process, denies him adequate and equal access to the courts and violates, among other provisions, the Ex Post–Facto Clause of the Oklahoma Constitution. We recently considered and rejected this same argument in *Hatch v. State*, 924 P.2d 284, 290 (Okl.Cr. 1996); *Walker v. State*, 933 P.2d 327 (Okl.Cr. 1997). Petitioner's first proposition of error is denied.

■ At Proposition II, Petitioner alleges his jury consisted of individuals who engaged in misconduct, harbored prejudices and were not qualified to sit as jurors, all resulting in a violation of his due process rights and denying him a fair trial. In support of the allegation that the jury was prejudiced, Petitioner attaches to his applications numerous affidavits signed by three different individuals (whose connection with this case is unclear as none of the affidavits identifies the affiant) concerning conversations had with Petitioner's trial jurors. This claim is not properly before this Court as it is a claim that could have been raised in Petitioner's direct appeal but was not. 22 O.S.Supp.1995, § 1089(C)(1). Proposition II does not meet the first prerequisite to Post–Conviction review and is therefore denied. Petitioner's claim is deemed waived.

At Proposition III, Petitioner asserts a claim of factual innocence based on newly discovered evidence. Contained in this argument is the claim that the evidence was discovered only 2 weeks prior to filing Petitioner's Post–Conviction application. Petitioner alleges the evidence could not have been discovered any earlier, but if it could have, it was "prior counsel's" fault and therefore rises to the level of ineffective assistance of trial counsel requiring relief. He next concedes that although the evidence could have been discovered prior to trial and even prior to Petitioner's direct appeal, it was not

---

**3.** 22 O.S.Supp.1995, § 1089(D)(4)(b)(1) & (2).

previously heard or presented due to trial counsel's ineffective assistance. We will address Petitioner's various claims of ineffective assistance of trial counsel collectively, including this issue.

■ However, with respect to the claim presented as one of newly discovered evidence, Petitioner still does not explain why this claim is not waived pursuant to 22 O.S.Supp.1995, § 1089(C)(1). Merely stating to this Court that evidence could not have been discovered is insufficient to meet the requirement that

> [t]he applicant shall state in the application *specific facts* explaining as to each claim why it was not or could not have been raised in a direct appeal and how it supports a conclusion that ... the defendant is factually innocent.

22 O.S.Supp.1995, § 1089(C) (emphasis added). Even assuming the affidavit submitted by Petitioner is true, it does not contain specific *facts* supporting the conclusion that Petitioner is factually innocent. Conflicting evidence which could have been presented at trial (of which there was much in this case) simply does not rise to the level of "specific facts supporting a conclusion that Petitioner is factually innocent". *See Moore,* 889 P.2d at 1258 (a new trial will not be granted where the evidence merely tends to discredit or impeach a witness without some probability that the trial result will be changed); *Smith v. State,* 826 P.2d 615, 617–18, *cert. denied,* 506 U.S. 952, 113 S.Ct. 405, 121 L.Ed.2d 331 (1992) (post-trial evidentiary hearing cast doubt on truth of witness's testimony but evidence would only discredit or impeach witness). Proposition III does not meet the first prerequisite to post-conviction review and is denied. Petitioner's claim is procedurally barred.

At Proposition IV, Petitioner alleges he was deprived of effective assistance of both trial and appellate counsel. We will address these claims separately. Petitioner claims trial counsel was ineffective as follows: failure to object to questions concerning Petitioner's gang affiliation, failure to cross-examine witness Finley about her bias or motive for testifying; failing to request an eyewitness identification expert; failure

to request a gang expert; failure to allow Petitioner to testify; failure to elicit exculpatory evidence from a witness; and failure to elicit testimony regarding the order of gunshots.

■ "Under the strict terms of the new statute, an ineffective assistance of trial counsel claim could not have been raised on direct appeal if it requires 'factfinding outside the direct appeal record' " *Walker,* 933 P.2d at 332 construing 22 O.S.Supp.1995, § 1089(D)(4)(b)(1). Ineffective assistance of trial counsel claims are properly raised and may only be considered on post-conviction if they are based upon facts which were not available to Petitioner's direct appeal attorney and therefore *could not* have been made part of the direct appeal record. *Walker,* 933 P.2d at 331–33 Items requiring factfinding outside the direct appeal record do not include items trial counsel had the ability to discover. *Id.* This Court is prohibited from considering Petitioner's ineffective assistance of trial counsel claims if the facts supporting those claims were available to Petitioner's direct appeal counsel, and either *were* or *could have been* used in his direct appeal. *Id.*

■ Petitioner, in his brief, admits he raised the issue of trial counsel's failure to object, but claims the issue could not have been fully developed on direct appeal because the information now being presented was " 'off the record' for direct appeal." Petitioner's claim is that he did not realize the effect his gang affiliation had on the jury's determination of his guilt or innocence. Only upon making such a determination, by interviewing jurors, was he able to determine that trial counsel's failure to object to such references constituted ineffective assistance. Despite his claim that the alleged juror interviews were not part of the original direct appeal record, it appears that the facts contained in them were available to his direct appeal attorney and thus could have been presented on direct appeal. There is no evidence to suggest that the jurors who were interviewed for Petitioner's post-conviction appeal were unwilling or unavailable to provide these same interviews at the time of

Petitioner's direct appeal. As such, there is nothing indicating this claim required fact-finding outside of the record, and the claim is not properly raised in this post-conviction appeal.

■ Petitioner also admits that his second claim, failure to cross-examine, was raised on direct appeal, but it too was not and could not have been fully developed at that time. The question here centers around testimony of a witness who testified at the preliminary hearing of Mikael Airhart, who was charged as an accessory to murder in relation to this case. Petitioner claims witness Finley was a potential suspect in this same case (as an accessory), providing her with a motive to alter her testimony. Once again, and by Petitioner's own admissions contained in his brief, trial counsel was aware of the preliminary hearing testimony and in fact used parts of it during Petitioner's trial. There is nothing indicating this claim of ineffective assistance is based on facts which were not available to Petitioner's direct appeal attorney. This claim is not properly raised in this post-conviction application, and we will not consider it.

■ The next two claims Petitioner presents allege ineffective assistance due to trial counsel's failure to secure an expert witnesses in the areas of eyewitness identification and gangs. Once again, no facts are present indicating such witnesses were unavailable or unwilling to provide affidavits supporting this argument at the time of Petitioner's direct appeal, or that information concerning these experts was kept from his direct appeal counsel. This claim is not properly before this Court for review.

■ Petitioner next claims trial counsel was ineffective in not allowing him to testify at trial. There is no evidence presented indicating Petitioner was unavailable, unwilling or unable to provide direct appeal counsel with this information and we will not entertain this claim on post-conviction.

■ Petitioner then alleges trial counsel failed to elicit exculpatory evidence from witnesses who testified at both the preliminary hearing and trial, and to elicit testimony from witnesses concerning the order of the gunshots, both amounting to ineffective assistance of trial counsel. Inasmuch as the claim is that the preliminary hearing contained this alleged exculpatory evidence, and evidence of the alleged order of the gunshots, Petitioner cannot now claim the error was not presented on direct appeal because it required fact-finding outside of the record. This claim is not properly presented on post-conviction and we will not review it.

None of Petitioner's claims of ineffective assistance of trial counsel were properly raised in this post-conviction appeal and we will not consider them here. This proposition of error is denied.[4]

Finally, Petitioner claims that ineffective assistance of *appellate* counsel entitles him to relief. He argues that while it was error for trial counsel to fail to elicit testimony of exculpatory evidence and the order of gunshots the error was compounded by appellate counsel's failure to present the error on direct appeal. Finally he claims it was error for appellate counsel to fail to raise a *Dawson*[5] claim on direct appeal.

■ Petitioner has the burden of establishing that his alleged claim could not have

---

4. Moreover, Petitioner's claims of ineffective assistance, if not barred by the provisions of 22 O.S.Supp.1995, § 1089(D)(4)(b)(1), are also procedurally barred by *res judicata* in that the same argument was presented in Petitioner's direct appeal. *Hooks v. State*, 902 P.2d 1120, 1122 n. 9 (Okl.Cr.1995), *cert denied*, —— U.S. ——, 116 S.Ct. 1440, 134 L.Ed.2d 561 (1996); *Moore v. State*, 889 P.2d 1253, 1258 n. 14 (Okl.Cr.), *cert denied*, —— U.S. ——, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); *Green v. State*, 881 P.2d 751, 754(Okl.Cr.1994); *Berget v. State*, 907 P.2d 1078, 1081 (Okl.Cr.1995), *cert denied*, —— U.S. ——, 116 S.Ct. 2505, 135 L.Ed.2d 195 (1996).

5. *Dawson v. Delaware*, 503 U.S. 159, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Petitioner alleges the Court determined in *Dawson* that the First and Fourteenth Amendments prohibit the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence has no relevance to the issue being decided in the proceeding. Petitioner's direct appeal was filed on January 21, 1993, obviously sometime after the *Dawson* case was decided.

been previously raised and thus is not procedurally barred. To do so, Petitioner's claim must be

> a *claim* contained in an original timely application for post-conviction relief *relating* to ineffective assistance of appellate counsel and the Court of Criminal Appeals first finds that if the *allegations* [of ineffectiveness] were true, the performance of appellate counsel constitutes the denial of reasonably competent assistance of appellate counsel under prevailing professional norms.

*Walker,* 933 P.2d at 333. (emphasis added). In the event this Court determines that the allegation appellate counsel was ineffective has merit, we may then consider the allegedly mishandled claim during the post-conviction proceeding or, if appropriate, during the direct appeal. *Id.* At this point, Petitioner will have established that the claim could not have been previously raised and will have met the first prerequisite to capital post-conviction review under § 1089(C)(1). *Walker,* 933 P.2d at 333–35.

▆▆▆ Pursuant to these guidelines, the initial inquiry is whether appellate counsel actually committed the act which gave rise to the ineffective assistance claim. Having established this, the next question is whether such performance was deficient under the first prong of the two-pronged *Strickland*[6] test. At this point, we do not apply the prejudice portion of *Strickland.* It is Petitioner's burden to set forth sufficient facts and law which allow this Court to fully assess appellate counsel's allegedly deficient performance. *Walker,* 933 P.2d at 333–35. Upon meeting this burden, sufficient to prove deficient attorney performance, this Court may then consider the substantive claim presented for review. At that point, the question then becomes whether such a claim meets the second prerequisite to capital post-conviction review, namely that the claim supports a conclusion that either the outcome of the trial would have been different but for the error(s) or that the defendant is factually innocent. 22 O.S.Supp.1995, § 1089(C)(2).

Under the terms of this new statute, capital post-conviction petitioners must prove deficient attorney *performance* as a precondition to having their underlying substantive claim reviewed. *Walker,* 933 P.2d at 333–35. Unlike prior post-conviction evaluation, wherein petitioners argued barred claims and then labeled them "ineffective assistance", the narrow issue now considered by this Court in evaluating such barred claims is whether appellate counsel's performance was deficient under prevailing professional norms. *Id.* We need not examine the merits of the barred claim which was allegedly mishandled to make this determination.

▆▆▆ While the standards set forth in *Strickland* can be applied to appellate counsel's performance, they were established to assess the effectiveness of trial counsel. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65; *Walker,* 933 P.2d at 334 n.29. In addition to the *Strickland* standards, appellate counsel owes his client a duty to raise relevant issues for this Court to consider, but he or she is not required to raise all non-frivolous issues available for consideration. *Walker,* 933 P.2d at 333–35; *Hooks v. State,* 902 P.2d 1120, 1123–24 (Okl.Cr.1995), *cert denied,* —— U.S. ——, 116 S.Ct. 1440, 134 L.Ed.2d 561 (1996).

▆▆▆ Our assessment of appellate counsel's performance will focus on whether counsel's assistance was reasonable considering all of the circumstances. *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065. We are cognizant of the fact that in any given case there are numerous ways to provide effective assistance. Likewise, we realize that effective performance of trial counsel should be evaluated not in light of what was in the realm of possibility for appealing a particular case, but instead whether counsel's conduct, at the time he represented the appellant, fell within the wide range of reasonable professional assistance. *Id.* Reasonable assistance does not mean that counsel's performance must be flawless or that counsel will be judged ineffective by hindsight. *Robinson,* 900 P.2d at 404. We also will not hold appellate counsel's performance to be deficient for failure to pursue a particular avenue on appeal if the client has given counsel

---

**6.** *Strickland v. Washington,* 466 U.S. 668, 677– 78, 104 S.Ct. 2052, 2059, 80 L.Ed.2d 674 (1984).

reason to believe that pursing that avenue of investigation would be fruitless or harmful. *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066. We now apply this analysis to Petitioner's claims of ineffective assistance of appellate counsel.

Petitioner first claims that appellate counsel failed to raise meritorious issues of ineffective assistance of trial counsel, specifically that trial counsel failed to examine and cross-examine trial witnesses from which he could have extracted exculpatory evidence and evidence which would have shown witness bias against Petitioner. In fact these claims were not presented on direct appeal and Petitioner has met the burden of proving that this conduct occurred. The next question is whether counsel's omission of these claims constitutes ineffective assistance.

In characterizing appellate counsel's performance as ineffective, Petitioner argues only that an attorney who fails to raise a meritorious claim is obviously ineffective and that appellate counsel's failure to identify the specified testimony as crucial to Petitioner's defense was proof of ineffective assistance. Petitioner labels his next argument "Ineffective assistance of appellate counsel——guilt by association". He claims here counsel was ineffective for failing to raise what he labels a *"Dawson "* issue, alleging any reference to Petitioner's gang affiliation is reversible error. Because the issue exists, he alleges, and because appellate counsel failed to raise it, appellate counsel was ineffective.

 After claiming appellate counsel was ineffective simply for failing to raise what Petitioner now espouses to be meritorious, appealable claims, Petitioner proceeds to regale this Court with substantive issues not previously presented, along with their accompanying arguments and authorities. Petitioner's conclusory allegation is his only support for the argument that counsel was ineffective. We find the allegation of ineffective assistance evidenced solely by failure to present an argument or claim is simply not enough for this Court to find appellate counsel was ineffective.

There is no information provided indicating appellate counsel was unaware of the arguments which Petitioner now claims would have resulted in reversal of his conviction, proof of his innocence or a new trial. There is no evidence that appellate counsel did not research the issues, that she did not read the preliminary hearing or trial transcripts, that she did not talk to the witnesses in question, or even that she did not know the issue was available. It is just as plausible for this Court to conclude that appellate counsel considered the arguments espoused here by Petitioner and rejected them as inappropriate or frivolous as it is for Petitioner to now claim that failure to raise the argument is, per se, ineffective assistance. There is nothing showing this Court that omission of these claims on direct appeal was unreasonable under the circumstances or did not fall within the wide range of professional assistance. Petitioner has not established that appellate counsel was ineffective simply for failing to raise these issues on direct appeal. Therefore, the substantive claims underlying these claims of ineffective assistance of appellate counsel remain procedurally barred and we will not address them on the merits. Relief based on Proposition IV is denied.

In conjunction with his application for post-conviction relief, Petitioner requests an extension of time to amend his post-conviction application, discovery and an evidentiary hearing. The request for extension of time is linked to Petitioner's request for discovery, claiming he must be given time to amend so he can add those issues he finds by conducting discovery. As such, we will address the request for discovery first.

Petitioner cites to 22 O.S.Supp.1995, § 1089(D)(3) as authority for authorizing "any discovery relevant to post-conviction issues." He encourages this Court to recognize that we need no longer question our authority to provide post-conviction discovery because the legislature "has made discovery an integral part of the post-conviction process". We are further encouraged to "vigorously implement" what Petitioner sees as a "new entitlement" to discovery. While requesting a general discovery order from this Court, Petitioner outlines specific items which he hopes to discover through this process, and asks this Court to grant those specific requests in the event his general

request is denied, claiming his ability to raise potential post-conviction claims is dependent upon his ability to discover various documents which he hopes to find in the possession of the police or various other State agencies.

▆▆▆ Petitioner's request for discovery is denied. The new post-conviction statute does not grant Petitioner "new entitlements" to discovery. Compulsory discovery is not required in post-conviction proceedings. *See Hooks,* 902 P.2d at 1125. Petitioner does not explain to this Court why the requested information is necessary to facilitate post-conviction review of his claim. Indeed, this Court has no questions about its authority to order discovery where appropriate. Accordingly Petitioner's application is denied.

▆▆ Petitioner also requests an evidentiary hearing. The new capital post-conviction statute does not specifically address motions for evidentiary hearings. However, pursuant to the statute, it is this Court's responsibility to assess the propositions raised and determine whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist. 22 O.S.Supp.1995, § 1089(D)(3). If such a controversy exists, this Court is free to issue an order, such as the one requested by Petitioner, to facilitate post-conviction review. *Walker,* 933 P.2d at 339–41.

▆▆ In reviewing Petitioner's claims, we do not find any material issues of fact which would warrant an evidentiary hearing. Petitioner's motion is based solely on the claims presented in his propositions of error and does not present for this Court any evidence that such a hearing would facilitate post-conviction review in his case. Petitioner's motion for an evidentiary hearing is therefore denied.

Finally, Petitioner requests an extension of time in which he would be allowed to amend his post-conviction application to include any issues discovered after his filing time has expired. This we refuse to do. Pursuant to 22 O.S.Supp.1995, § 1089(D)(2), no application may be amended after the time specified in the statute. Such an amendment will be considered a subsequent application. Peti-

tioner's request for extension of time is denied.

After carefully reviewing Petitioner's applications for post-conviction relief, discovery, an evidentiary hearing and request for extension of time, we conclude (1) that there exist no controverted previously unresolved factual issues material to the legality of Petitioner's confinement, (2) that Petitioner could have previously raised his collaterally asserted grounds for review, and (3) that the current Post–Conviction statutes warrant no relief. 22 O.S.Supp.1995, § 1089(D)(4)(a). Accordingly, Petitioner's Application for Post–Conviction Relief, Request for Extension of Time, Application for Discovery and Request for an Evidentiary Hearing are **DENIED**.

CHAPEL, P.J., and STRUBHAR, V.P.J., concur.

LUMPKIN and JOHNSON, JJ., concur in results.

LUMPKIN, Judge, concurring in results.

I agree that Petitioner's convictions should be affirmed. I write separately though to address two points. First, I concur, based on *stare decisis,* in the discussion dealing with ineffective assistance of counsel. *See Walker v. State,* 933 P.2d 327, 330–31, 341–44 (Okl.Cr.1997). Secondly, I also want to address the implication in Proposition II that Petitioner's claim of juror misconduct is an issue we would have addressed if raised on direct appeal.

In support of his claim of jury misconduct, Petitioner presents numerous affidavits, which are viewed within the limited context of Rule 9.7(D), concerning conversations with Petitioner's trial jurors. This Court has since statehood adhered to the general rule that a defendant cannot impeach a jury's finding with testimony (evidence) of what transpired in the jury room. Indeed, the Supreme Court of the United States has spoken on the very same subject. In *McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915), the Court explained why impeachment of a jury's verdict after the fact by a member of the panel is improper:

[A]ll verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

*Id.* at 267–68, 35 S.Ct. at 784. *See also Tanner v. United States,* 483 U.S. 107, 121–22, 107 S.Ct. 2739, 2748–49, 97 L.Ed.2d 90 (1987). This Court has adhered to the same philosophy. *Hall v. State,* 762 P.2d 264, 266–67 (Okl.Cr.1988); *Lee v. State,* 738 P.2d 173, 176–77 (Okl.Cr.1987); *Weatherly v. State,* 733 P.2d 1331, 1335 (Okl.Cr.1987); *DeRonde v. State,* 715 P.2d 84, 86–87 (Okl.Cr.1986); *Wacoche v. State,* 644 P.2d 568, 572–73 (Okl. Cr.1982); *West v. State,* 617 P.2d 1362, 1370 (Okl.Cr.1980); *Killough v. State,* 94 Okl.Cr. 131, 135–36, 231 P.2d 381, 387–88 (1951); *Ex parte Lewis,* 92 Okl.Cr. 334, 336, 223 P.2d 143, 144 (1950); *Martin v. State,* 92 Okl.Cr. 182, 218, 222 P.2d 534, 552 (1950); *Williams v. State,* 92 Okl.Cr. 70, 78–80, 220 P.2d 836, 841–42 (1950); *Harrell v. State,* 85 Okl.Cr. 293, 296, 187 P.2d 676, 677 (1947). And lest we forget, such impeachment is also prohibited by statute. 12 O.S.1991, § 2606(B).

I mention this because this appears to be a recurring argument among capital post-conviction petitioners. It is hoped that by mentioning it here, petitioners will adhere to the established holdings by this Court, and the United States Supreme Court, together with enacted statutory imperatives.